# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **FUNCTIONAL PRODUCTS** | : | |
| **TRADING, S.A.,** | : | |
| | : | |
| **Plaintiff and** | : | |
| **Counterclaim Defendant,** | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **v.** | : | **1:12-CV-0355-WSD-AJB** |
| | : | |
| **JITC, LLC and ROBERT JANITZEK,** | : | |
| | : | |
| **Defendants,** | : | |
| **Counterclaim Plaintiffs,** | : | |
| **and Third-Party Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **I-GRAIN, LLC; and LORIN A. TARR,** | : | |
| | : | |
| **Third-Party Defendants.** | : | |

## UNITED STATES MAGISTRATE JUDGE'S
## <u>FINAL REPORT AND RECOMMENDATION</u>

Before the Court is a motion for default judgment by Plaintiff Functional

Products Trading, S.A. ("Functional Products"), [Doc. 159]. For the reasons herein,

the undersigned **RECOMMENDS** that the motion be **GRANTED** and that default

judgment be entered against Defendants JITC, LLC ("JITC") and Robert Janitzek

("Janitzek") on Counts I, II, III, IV, VI, VII, X, XI, and XIII of Plaintiff's Second

AO 72A
(Rev.8/8
2)

Amended Complaint, [Doc. 99], and that JITC and Janitzek be held jointly and severally liable. The undersigned **FURTHER RECOMMENDS** that the District Court award Plaintiff compensatory damages (but not including lost profits), punitive damages, and costs, and that it award Plaintiff attorney's fees in the reduced amount as discussed herein.

## I.    Background

Functional Products filed a complaint on February 2, 2012, seeking specific performance, replevin, and damages from I-Grain, LLC ("I-Grain") and Lorin Tarr ("Tarr") for breach of an agricultural sales contract. [Doc. 1]. On February 24, 2012, Functional Products filed a first amended complaint, adding JITC and Janitzek as defendants. [Doc. 32]. On July 31, 2012, defendants I-Grain and Tarr settled with Functional Products and were dismissed from the case. [Doc. 93].

Functional Products then filed a Second Amended Complaint on September 7, 2012, asserting the following claims against Defendants Janitzek and JITC:

Count I.    Violation of 18 U.S.C. § 1962(c) ("RICO") (participating in the affairs of an enterprise through a pattern of racketeering activity)

Count II.    Violation of 18 U.S.C. § 1962(d) (RICO conspiracy)

Count III.    Violation of O.C.G.A. § 16-4-4(b) (Georgia RICO)

2

Count IV.    Violation of O.C.G.A. § 16-4-4(c) (Georgia RICO conspiracy)

Count V.    Fraud and Conspiracy to Commit Fraud

Count VI.    Declaratory Judgment/Rescission of Sales Contracts based upon Fraudulent Inducement

Count VII.    Declaratory Judgment/Rescission of Release based upon Fraudulent Inducement

Count VIII.    Violation of O.C.G.A. § 18-2-75 (Fraudulent Transfer)

Count IX.    Constructive Trust

Count X.    Punitive Damages

Count XI.    Attorneys' Fees and Expenses of Litigation

Count XII.    (In the Alternative) Breach of Contract

Count XIII.    Piercing the Corporate Veil and Alter Ego.

[Doc. 99].  Defendants answered on September 21, 2012, and also filed a third-party complaint and cross claim against I-Grain and Tarr, and a counterclaim against Functional Products.  [Docs. 104, 105, 106, 107].

On December 21, 2012, the undersigned held a discovery hearing to discuss, among other issues, Functional Products' motion to compel the deposition of Defendants and for sanctions.  [Doc. 117].  As a result of the hearing, the undersigned

3

AO 72A
(Rev.8/8
2)

required Janitzek to appear in person for his deposition in the Northern District of Georgia between February 4 and February 8, 2013, with the specific date and time to be agreed to by counsel for the parties. [Doc. 131 at 2]. To the extent that sanctions were requested, the undersigned denied the motion because Functional Products did not establish that the failure to appear for the previously scheduled deposition was willful. [*Id.*]. The undersigned stated orally, however, that if Janitzek failed to appear as ordered during the specified week in February 2013, the undersigned would recommend to the District Judge that JITC and Janitzek's answer be stricken and default be entered in this case. [FTR Gold Recording, Dec. 21, 2012, 11:07 AM; *see also* Doc. 142 at 5, Doc. 144 at 4].

The deposition was noticed for February 6, 2013, and Janitzek failed to appear, prompting Functional Products' motion for sanctions, including the striking of Defendants' Answer and entry of default. [Doc. 142; *see id.* at 5-6, Doc. 144 at 3]. The undersigned issued a Report and Recommendation ("R&R") recommending that the motion be granted, [Doc. 154], and on August 20, 2013, the District Court adopted the R&R, [Doc. 158]. As a result, the Clerk entered default against Defendants, [Dkt. Entry dated 8/20/2013], and on September 16, 2013, Functional Products moved

4

for default judgment, [Doc. 159]. Defendants did not respond to the motion for default judgment. [*See* Dkt.].

On January 9, 2014, the undersigned, having reviewed the motion for default judgment, ordered a hearing pursuant to Rule 55(b)(2)(C) of the Federal Rules of Civil Procedure to obtain additional information. [Doc. 161]. This hearing was held on February 18, 2014. [Doc. 162]. Despite notice fo the hearing appearing on the Docket, Defendants were not in attendance and no one representing them appeared. [*Id.*]. At the hearing, Functional Products presented affidavit testimony and documents supporting its requested damages, attorney's fees, and costs. [*See* Docs. 162, 163].

## II.  Legal Standard

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default and default judgment. After the entry of default under Rule 55(a), the Court may enter default judgment under Rule 55(b)(2). "The entry of a default judgment is committed to the discretion of the district court . . . ." *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985) (citing 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2685 (1983)). Although in the Eleventh Circuit default judgments are viewed with disfavor due to a strong policy of determining cases on their merits, *see In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003), a "district court

5

has the authority to enter default judgment for failure to prosecute with reasonable diligence or to comply with its orders or rules of procedure," *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985) (citations omitted); *see also United States v. Inter-American Shipping Corp.*, 455 F.2d 938, 940 (5th Cir. 1972) ("Normally a defendant's failure to defend results in default judgment upon motion of the plaintiff.") (citing Fed. R. Civ. P. 55)[1]; *Flynn v. Angelucci Bros. & Sons, Inc.*, 448 F. Supp. 2d 193, 195 (D.D.C. 2006) (observing that "[w]hile modern courts do not favor default judgments, they are certainly appropriate when the adversary process has been halted because of an essentially unresponsive party.") (citation omitted).

In order to enter a default judgment, the Court first must have subject-matter jurisdiction over Plaintiff's claims and personal jurisdiction over Defendants. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1215 n.13 (11th Cir. 2009) (holding that default judgment is void if the court lacked jurisdiction over the subject matter or parties); *Rash v. Rash*, 173 F.3d 1376, 1381 (11th Cir. 1999) ("A defendant may defeat subsequent enforcement of a default judgment in another forum by demonstrating that the judgment issued from a court lacking personal jurisdiction even if the court entering

---

[1]      In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

AO 72A
(Rev.8/8
2)

the default determined that it had personal jurisdiction over the defendant.") (citations omitted); *Familia De Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1137-38 (5th Cir. 1980) (default judgment for failing to comply with discovery orders valid only if court had personal jurisdiction over defendants).

In addition, "[i]n considering a motion for entry of default judgment, a court must investigate the legal sufficiency of the allegations of the plaintiff's complaint." *Bruce v. Wal-Mart Stores, Inc.*, 699 F. Supp. 905, 906 (N.D. Ga. 1988) (Forrester, J.) (citing *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). That is, a default judgment cannot stand on a complaint that fails to state a claim. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) (citing *Nishimatsu*, *id.*). A default judgment has the effect of establishing as fact the plaintiff's well-pleaded allegations of fact, and bars the defendant from contesting those facts on appeal. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir.1987) (citing *Nishimatsu*, *id.*); *see also Nishimatsu*, *id.* ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (citations omitted). The defendant, however, "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

7

Finally, in considering a motion for default judgment, a court may also consider evidence presented at a hearing on the motion for default judgment, or other evidence in the record. *See* Fed. R. Civ. P. 55(b)(2)(C); *S.E.C. v. Smyth*, 420 F.3d 1225, 1231-32 & n.13 (11th Cir. 2005).

**III.   Discussion**

Functional Products requests default judgment for claims asserting violation of 18 U.S.C. §§ 1962(c) and (d) and O.C.G.A. § 16-14-4(b) and (c) (the "RICO Claims") (Counts I-IV), a declaration that the contracts at issue and a corresponding liability release are invalid for fraud (Counts VI-VII), a claim for punitive damages (Count X), a claim for attorney's fees and expenses of litigation under O.C.G.A. § 16-14-6(c) and 18 U.S.C. § 1964(c) (Count XI), and a claim for piercing the corporate veil and alter ego (Count XIII). [Doc. 159 at 6-11].  The undersigned first examines the Court's subject matter jurisdiction and personal jurisdiction over Defendants, and then discusses liability and damages.

**A.     Jurisdiction**

The undersigned has reviewed the verified Second Amended Complaint and other matters of record in this case.  In its denial of JITC's Amended Motion to Compel Arbitration, [Doc. 95, Doc. 70 at 28-45], the Court examined agreements between the

8

parties and determined that it had subject-matter jurisdiction over the case. Moreover, the Second Amended Complaint asserts three bases for subject-matter jurisdiction in this Court: (1) 28 U.S.C. § 1331, based on assertion of claims arising under the statutes and laws of the United States; (2) 28 U.S.C. § 1332, because there is complete diversity of citizenship between Functional Products and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs; and (3) 18 U.S.C. § 1965, because of the assertion of claims arising under the federal RICO statute. (Second Am. Compl. ¶¶ 17-19). The undersigned therefore concludes that this Court has subject-matter jurisdiction over this case on two of the grounds asserted.

First, the Court cannot determine whether it has diversity of citizenship jurisdiction. The Eleventh Circuit has held that the citizenship of a limited liability company for purposes of diversity of citizenship is a citizen of any state of which a member of the company is a citizen. *Rolling Greens MHP, L.P. v. Comcast SCH Holdings*, 374 F.3d 1020, 1022 (11th Cir. 2004). Plaintiff's complaint only alleges that JITC is a Georgia limited liability company controlled by Janitzek. [Doc. 99 at 5-6 (¶¶ 10, 12)]. Second, however, subject matter jurisdiction is proper in this Court because Plaintiff asserts claims arising under federal law. *U.S. Commodity Futures Trading Comm'n v. Hunter Wise Commodities, LLC*, --- F.3d ----, ----,

2014 WL 1424435, at *5 (11th Cir. Apr. 15, 2014).  In addition, the Court can exercise supplemental jurisdiction over Plaintiff's state law claims because they "arise out of a common nucleus of operative fact with a substantial federal claim."  *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 742-43 (11th Cir. 2006) (citations omitted); *see* 28 U.S.C. § 1367.

Regarding personal jurisdiction over Defendants, the Second Amended Complaint alleges that JITC is a Georgia limited liability company.  [*Id.* ¶¶ 10, 12]. Thus, personal jurisdiction over JITC is established.  *Pratt & Whitney Canada, Inc. v. Sanders*, 218 Ga. App. 1, 2, 460 S.E.2d 94, 95 (1995).  As for Janitzek, who is alleged not to be a United States citizen but instead to be a resident of Germany and the Philippines (Second Am. Compl. ¶ 11), assessing whether the Court has personal jurisdiction requires a two-part analysis:  determining whether there is jurisdiction under the state long-arm statute and determining whether the non-resident defendant has minimum contacts with the forum state sufficient to satisfy the Due Process Clause of the Fourteenth Amendment.  *Cable/Home Commc'n. Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990).  The Second Amended Complaint alleges that Janitzek has purposefully established minimum contacts and has engaged in a course of systematic contacts with the state of Georgia.  [*Id.* ¶ 12].  He also is alleged to have

10

transacted business in Georgia, including the activities that are at issue in this action, in part by exercising his ownership in JITC and through his fraudulent business enterprise conducted through this company. [*Id.* ¶¶ 12-14]. Thus, personal jurisdiction over Janitzek is established.

Additionally, the Second Amended Complaint alleges personal jurisdiction pursuant to 18 U.S.C. § 1965(a), because Defendants transact their affairs in this District, and 19 U.S.C. § 1965(b), because the ends of justice require that they be brought before this Court. [*Id.* ¶¶ 16].

The undersigned therefore concludes that personal jurisdiction over Defendants is proper.

**B.    Liability**

**1.    RICO Claims**

The undersigned finds that Functional Products has stated a cause of action against Defendants for violation of the federal and Georgia RICO statutes. (Second Am. Compl. ¶¶ 86-128). To state a claim for violation of the federal RICO statute, a plaintiff must show "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the

11

activities of which affect interstate or foreign commerce." *McCulloch v. PNC Bank, Inc.*, 298 F.3d 1217, 1225 (11th Cir. 2002). Also, where the RICO claim is premised on fraud, the Plaintiff must meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure. *Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007). Further, where a plaintiff joins multiple defendants, Rule 9(b) requires the Complaint to "inform each defendant of the nature of his alleged participation in the fraud." *Ambrosia Coal & Const. Co.*, 482 F.3d at 1317 (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)) (internal quotation marks omitted).

Georgia's RICO statute is modeled on the federal statute. *Wylie v. Denton*, 323 Ga. App. 161, 166, 746 S.E.2d 689, 694 n.7 (2013). In order to establish a Georgia civil RICO claim, a plaintiff is required to show by a preponderance of the evidence that Defendants violated the RICO statute, O.C.G.A. § 16-14-4, that it has suffered injury, and that Defendant's violation of the RICO statute was the proximate cause of the injury. *Cox v. Mayan Lagoon Estates, Ltd*, 319 Ga. App. 101, 109, 734 S.E.2d 883, 891 (2012) (citations omitted). There must be a "direct nexus between at least one of the predicate acts listed under the RICO Act and the injury [the plaintiff]

12

purportedly sustained." *Nicholson v. Windham*, 257 Ga. App. 429, 430, 571 S.E.2d 466, 468 (2002).

Functional Products alleges in the Second Amended Complaint that JITC is a racketeering enterprise engaged in and whose activities affect interstate commerce. (Second Am. Compl. ¶¶ 88, 109). It also claims that Defendants along with others formed a second association-in-fact enterprise, (*id.*), and that Janitzek actively participates in and manages these enterprises. (*Id.* ¶¶ 89, 112). Functional Products alleges that the purpose of these enterprises is to obtain money from unsuspecting victims for goods that are never delivered and never intended to be delivered. (*Id.* ¶ 88.) It asserts that Defendants intentionally and willingly devised and participated in multiple acts of mail fraud, wire fraud, money laundering, and theft by deception through a pattern of racketeering activity, and for the unlawful purpose of defrauding Functional Products and others. (*See generally id.* ¶¶ 90-128.) Functional Products alleges with specificity examples of Defendants' actions in furtherance of its fraudulent scheme. (*See id.* ¶¶ 114-115 (including the use of the United States mails and interstate and foreign wire communication facilities to transfer payments and fictitious or false documents in furtherance of the fraudulent scheme alleged)). The

13

AO 72A
(Rev.8/8
2)

Second Amended Complaint also alleges that Plaintiff was injured financially as a proximate cause of Defendants' RICO violations.  (*Id.* ¶¶ 121-22).

The undersigned concludes that the allegations of the Second Amended Complaint are sufficient to entitle Functional Products to recover against Defendants for its claims brought under the federal and Georgia RICO statutes.

### 2.    Declaration Invalidating Contracts and Liability Release

Functional Products also requests a declaration invalidating two sales contracts and a release of claims.  (Second Am. Compl. ¶ 156).[2]  Although Functional Products does not identify the legal basis for such a request, the undersigned presumes that it is based on the Declaratory Judgment Act, 22 U.S.C. § 2201, which permits a court to declare rights before they are violated.

In a case in which a plaintiff brings a declaratory-judgment action, "[i]n order to demonstrate that a case or controversy exists," the "plaintiff must allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).  Here, Functional Products

---

[2]    These documents are attached to the Declaration of Sandra Guillot at Doc. 159-2.

alleges that it has rescinded the two sales contracts, but that Defendants continue to claim their validity.  (Second Am. Compl. ¶¶ 146-156.)  As for the release of liability, Functional Products alleges that this document was another instrument of Defendants' fraud.  (*Id.* ¶¶ 158-167).  Upon review of the Second Amended Complaint and the documents themselves, the undersigned concludes that a declaration invalidating the two sales contracts and the release of claims is appropriate.

### 3.     Piercing the Corporate Veil and Alter Ego

Next, Functional Products requests that the Court pierce the corporate veil of JITC and hold Defendants jointly and severally liable.  (Second Am. Compl. ¶¶ 187-194).  "The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, perpetuate fraud or to evade contractual or tort responsibility."  *Renee Unlimited, Inc. v. City of Atlanta*, 301 Ga. App. 254, 259, 687 S.E.2d 233, 238 (2009) (quoting *Amason v. Whitehead*, 186 Ga. App. 320, 321, 367 S.E.2d 107, 109 (1988) (citation and punctuation omitted)).  "The theory applies when there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist."  *Multi–Media Holdings, Inc. v. Piedmont Ctr., 15 LLC*, 262 Ga. App. 283, 285, 583 S.E.2d 262, 264 (2003).

15

"[A] court may pierce the corporate veil if plaintiff can prove one of the following: (1) the shareholders disregarded the corporate entity, thereby making the entity a mere instrumentality for the transaction of their own affairs; (2) that there is such a unity of interest and ownership that there are no longer separate personalities of the corporation and the individuals; or (3) adherence to the doctrine of a corporate entity would promote injustice or perpetuate fraud."   *Powell Co. v. McGarey Group, LLC*, 508 F. Supp. 2d 1202, 1220-21 (N.D. Ga. 2007) (Carnes, J.) (citing *Dearth v. Collins*, 441 F.3d 931, 934 (11th Cir. 2006) (internal citations omitted)).

Here, Functional Products alleges as follows:

- Janitzek, acting in concert and/or separately, has abused the corporate form and improperly utilized JITC as a corporate subterfuge to evade creditors and perpetuate fraud and, on information and belief, has utilized JITC as a mere instrumentality for the transaction of his own affairs.  Further, Janitzek used JITC as an alter ego for these same purposes.  (Second Am. Compl. ¶ 188.)

- On information and belief, JITC was substantially undercapitalized from the time of its inception until it received funds based upon Defendants' fraud on Financial Products.  (*Id.* ¶ 189.)

- On information and belief, both [sic] JITC is financially unstable and likely insolvent.  It has no independent financing.  (*Id.* ¶ 190.)

- On information and belief, Janitzek has looted JITC, immediately transferring amounts paid by Functional Products to himself

16

personally and to other insider(s).  To the extent those transfers are determined to be fraudulent, Functional Products reserves all of its rights to assert that they should be avoided.  (*Id.* ¶ 191.)

- In order to accomplish the fraud described in this Second Amended Verified Complaint, Defendants have operated as a de facto enterprise, working as if they were one business with common ownership, common management, and common personnel, and with rapid movement of funds from one entity to the other. Functional Products expects that discovery will confirm other entities, for example, Janitzek's Philippines-based Janitzek International Trading Corporation, that have in concert with Janitzek and JITC, served as part of this de facto enterprise and scheme.  Functional Products reserves the right, upon such discovery, to add those entities as party defendants.  (*Id.* ¶ 192.)

- JITC's corporate veil should be pierced and its corporate form disregarded by virtue of actions taken by Janitzek to render it a mere alter ego of Janitzek, and by virtue of the fact that Janitzek has used and is attempting to use the corporate form of JITC to accomplish unjust and fraudulent results.  (*Id.* ¶ 193.)

- In light of the above facts, Functional Products requests that the Court disregard the separate existence of JITC, and hold Janitzek jointly and severally liable for all damages incurred by Functional Products as a result of any actions or omissions by JITC.  (*Id.* ¶ 194.)

In considering whether Plaintiff is entitled to default judgment on its count seeking to pierce the corporate veil, the Court first must consider whether Plaintiff's Second Amended Complaint properly pleaded this claim because this count alleged facts with less specificity than Plaintiff alleged in other counts.  As discussed above,

17

in analyzing a party's complaint for purposes of considering the propriety of default judgment, the Court employs *Nishimatsu*'s focus on "well-pleaded allegations of fact." In *Nishimatsu*, the Former Fifth Circuit held that the defaulting "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law," and "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Nishimatsu*, *id.* (citations omitted); *see also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F3d 1298, 1307 (11th Cir. 2009) (" 'A default judgment is unassailable on the merits, but only so far as it is supported by well-pleaded allegations. . . . A default defendant may, on appeal, challenge the sufficiency of the complaint, even if he may not challenge the sufficiency of the proof.' ") (quoting *Nishimatsu*, *id.*).

These default judgment principles raise the question of how the Supreme Court's recent decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), affect, if at all, this Court's consideration of Plaintiff's default judgment motion.  In *Twombly* and *Iqbal*, the Supreme Court, in applying the requirements of Rule 8 of the Federal Rules of Civil Procedure, held that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

18

The Court also explained that to be sufficient, while "detailed factual allegations" are not required, the complaint must offer more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action. . . ." *Twombly*, 550 U.S. at 555.  Although the Court's research has not disclosed any Eleventh Circuit opinions applying the *Twombly/Iqbal* pleading standard in the context of a default judgment motion,[3] several recent unreported district court opinions, including some within this circuit, have found *Twombly* and *Iqbal* relevant to the default judgment inquiry.  *See, e.g., Pierre v. Venus Satellite, Inc.*, No. 3:12-cv-343-J-34JBT, 2014 WL 103212, at \*4 (M.D. Fla. Jan. 8, 2014); *Northland Ins. Co. v. Adams*, No. 11-cv-81092, 2012 WL 3291872, at \*2 (S.D. Fla. June 4, 2012); *Osprey Special Risks Ltd. v. Ocean Ins. Mgmt., Inc.*, No. 8:10-cv-862-T-30AEP, 2011 WL 32422, at \*2 (M.D. Fla. Jan. 5, 2011) (*Iqbal* standard "applies equally to a motion for entry of default judgment"); *Wynne v. Birach*, No. 1:09cv15, 2009 WL 3672119, at \*2 n.6

---

[3]     In *Khufu El v. Platinum Home Mortg. Svcs., Inc.*, 490 Fed. Appx. 306, 307 (11th Cir. Sept. 24, 2012), the court affirmed the dismissal of plaintiffs' complaint, in part, because their complaint did not satisfy the *Iqbal* pleading standard.  It also affirmed the district court's denial of the plaintiffs' default motion judgment, holding that the defendant's "failure to answer the complaint did not require the district court to enter a default judgment because Appellants' complaint failed to provide a proper basis for judgment against" it, and relying on *Nishimatsu*.  However, the *Khufu El* case did not discuss the interrelation of *Twombly/Iqbal* and *Nishimatsu*.

19

(E.D. Va. Nov. 3, 2009) (default judgment standard is "similar to that applied to a motion to dismiss" under *Iqbal* ); *Bogopa Serv. Corp. v. Shulga*, Civ. No. 3:08cv365, 2009 WL 1628881, at *1-2 (W.D.N.C. June 10, 2009) (opining that the standard for grant of default judgment "is the same" as the *Iqbal* standard, and rejecting claim for personal liability of corporate officer where complaint contained no "factual allegations as to what [officer] has done or on what basis he would be personally liable for . . . corporate [service mark] infringement").

Under most circumstances, the Court would find these cases instructive, because applying *Twombly/Iqbal*'s pleading standards in the default judgment context is wholly consistent with *Nishimatsu*'s "well-pleaded allegations of fact" standard, and thus in determining whether a party was entitled to default judgment, the Court would apply *Nishimatsu*'s "well-pleaded allegations of fact" in light of *Twombly/Iqbal*'s plausibility gloss. The present case is somewhat unusual, and for the reasons that follow, Plaintiff's allegations seeking to pierce the corporate veil are barely but just sufficient enough to qualify under *Nishimatsu* and permit entry of a default judgment in its favor on the piercing claim.

First, unlike the more common scenario where default judgment is sought when a defendant does not answer or otherwise respond to the complaint, in this case

20

Defendants did not file a motion to dismiss pursuant to *Twombly* or *Iqbal*, and instead answered Plaintiff's Second Amended Complaint, denying, *inter alia*, Plaintiff's allegations seeking to pierce the corporate veil.  [*See* Doc. 107 at 37-38 (stricken)]. Thus, the claim was definitive and clear enough for Defendants—who at the time were represented by experienced and competent counsel—to formulate an answer.

Second, it is significant that the reason the District Court struck Defendants' answers was their sanctionable failure to comply with the Court's discovery orders. Some of Plaintiff's allegations in its piercing count allege facts on "information and belief."  (*See* Second Am. Compl. ¶¶ 189-91).  Information that could likely establish the truth of these broadly-stated allegations—concerning Defendants' undercapitalization, JITC's likely insolvency, its financing (or lack thereof), Defendants' use of corporate funds for personal expenses and any explanations for rapid transfers of corporate funds to Janitzek—is peculiarly within the possession and control of Defendants.[4]  Although the Court has found no cases from the Eleventh Circuit, the Second Circuit has explained that "[t]he *Twombly* plausibility

_____

[4]      The Court also observes that the exhibits attached to Plaintiff's default judgment motion appear to reflect, at a minimum, that JITC's corporate account was used to pay personal expenses.  [*See* Doc. 126 at 23-24 (grocery purchases); 25 (jewelry purchases), as well as immediate wire transfers to Janitzek or for his benefit once funds from Plaintiff were received by JITC.  [*Id.* at 123-26].

21

standard . . . does not prevent a plaintiff from 'pleading facts alleged "upon information and belief" where the facts are peculiarly within the possession and control of the defendant . . . , or where the belief is based on factual information that makes the inference of culpability plausible . . . .' " *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted); *see also* Charles A. Wright and Arthur R. Miller, 5 *Federal Practice and Procedure* § 1224 (3d ed. 2013) ("Although there is no express authorization in the federal rules for pleading on information and belief, allegations in this form have been held to be permissible, even after the *Twombly* and *Iqbal* decisions."). *But cf. Joe Hand Promotions, Inc. v. Yakubets*, --- F. Supp. 2d ----, ----, 2014 WL 960787 at *26 (E.D. Pa. Mar. 11, 2014) ("Conclusory allegations on information and belief will generally not be enough, even at the default judgment stage, to allow the imposition of vicarious liability.") (internal quotation marks omitted) (citations omitted).  Thus, Functional Products cannot be faulted for not providing further detailed allegations about Defendants' disregard of the corporate structure—information peculiarly within the possession and control of Defendants—since Defendants failed to comply with lawful orders of the Court to be deposed.

AO 72A
(Rev.8/8
2)

Moreover,  Plaintiff's remaining allegations are sufficient to allow the Court to pierce the corporate veil, even if Functional Products' allegation that Janitzek used JITC "as a corporate subterfuge to evade creditors and perpetuate fraud" (Second Am. Compl. ¶ 188) is a legal conclusion which the Court is not bound to accept as true. *Iqbal*, 129 U.S. at 678; *see also Illinois Union Ins. Co. v. NRI Constr. Inc.*, 846 F. Supp. 2d 1366, 1378 (N.D. Ga. 2012) (Forrester, J.) ("[A] defendant does not admit legal conclusions when he defaults, only the well-pleaded allegations of the complaint.").

For these reasons, the undersigned concludes that the District Court should pierce the corporate veil and hold Defendants jointly and severally liable as to the counts in the Second Amended Complaint on which Plaintiff is entitled to default judgment.

## C.    Damages

Functional Products asserts that it should be awarded compensatory damages, punitive damages, and attorney's fees and costs.  The undersigned has reviewed Functional Products' brief and documents in support as well as the additional documents and information presented during the hearing, along with the Second Amended Complaint, and recommends that damages, fees, and costs should be awarded as discussed below.

23

1.      **Compensatory Damages**

Functional Products requests $10,206,826.05 in total compensatory damages under the RICO claims and for lost profits. The Court concludes that Plaintiff is entitled to recover some, but not all, of these requested damages.

First, the figure includes the $1,800,414.35 paid by Functional Products under the Black Seed Contract and the White Seed Contract, for which no seed was received. [Doc. 159 at 1 (citing Declaration of Sandra Gillott, Doc. 159-1, ¶ 4)].[5] Pursuant to the federal and Georgia RICO statutes, the mandatory trebled amount is $5,401,243.05. *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of [the federal RICO Act] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee. . . .");

_____

[5]      The undersigned notes that the non-trebled amount for compensatory damages cited in the supporting declaration is $1,800,414.30 (Gillot Decl. I ¶ 4), which is 5 cents less than the amount of $1,800,414.35 that is cited in Plaintiff's brief, [Doc. 159 at 11]. Additionally, the declaration refers to individual payments including one for $83,004.30 (Gillot Decl. I ¶ 4), but during the hearing, counsel for Functional Products identified individual payments including one for $83,004.35, [FTR Gold Recording, Feb. 18, 2014, 10:14 AM]. Based on bank records filed in this case and cited during the hearing, the correct amount for this individual payment is $83,004.35. [*See* Doc. 126 at 420]. Thus, the correct total amount for compensatory damages, prior to trebling, is $1,800,414.35.

24

O.C.G.A. § 16-14-6(c) ("Any person who is injured by reason of any violation of [the Georgia RICO Act] shall have a cause of action for three times the actual damages sustained and, where appropriate, punitive damages.  Such person shall also recover attorneys' fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred.").

Therefore, the undersigned **RECOMMENDS** that Plaintiff be **AWARDED COMPENSATORY DAMAGES** under Plaintiff's Federal and Georgia RICO claims in the amount of $1,800,414.35, which when trebled is **$5,401,243.05**.

In addition, Functional Products requests $1,601,861 in lost profits.  In its motion for default judgment and supporting memorandum, Functional Products stated it was not seeking lost profits "in the interest of efficiency and judicial economy because the proof of these damages presents a more involved undertaking[ and] Functional Products has recovered, at least, some of these lost profits as part of a confidential settlement with former defendants Lorin Tarr and I-Grain, LLC." [Doc. 159 at 11 n.5].  However, at the default judgment hearing, Plaintiff stated that it would in fact pursue damages based on lost profits, [FTR Gold Recording, Feb. 18, 2014, 10:15 AM], and that the support for this figure is set forth in a second declaration by Sandra Gillott.

(Declaration of Sandra Gillot, [Doc. 164 at 2-7].)  Trebled, this lost profits amount is $4,805,583.00.

The Court concludes that Functional Products is not entitled to lost profits.  First, it stated in its motion that it was not seeking that item of damages.   Although Defendants had no reason not to attend the default judgment hearing before the undersigned and in fact they did not appear, they still had the right to rely upon Plaintiff's representations in its motion and supporting memorandum as to the damages it was *not* seeking.  Second, and more important, although Plaintiff's calculations of lost profits are based on Gillot's affidavit, nowhere in the affidavit (or the record in general as far as the Court can tell) is information pertaining to the setoff in the requested lost profits which Plaintiff received as a result of the confidential settlement with Tarr and I-Grain.  In order for lost profits to be recovered, there must be "definite, certain and reasonable data for their ascertainment."    *Kitchen v. Hart*, 307 Ga. App. 145, 152, 704 S.E.2d 452, 458 (2010) (citations omitted).  Since critical data is missing from the record, Plaintiff has not satisfied this standard, and as a result, the Court is unable accurately assess the true amount of lost profits.  Thus, the Court **RECOMMENDS** that Plaintiff **NOT BE AWARDED** lost profits in the amount of $1,601,861, which when trebled amounts to $4,805,583.00.

26

Thus, the total amount of compensatory damages requested of $10,206,826.05 is properly reduced to **$5,401,243.05**. The undersigned finds that these compensatory damages requested are reasonable and supported by competent evidence, and thus it is **RECOMMENDED** that Plaintiff be awarded compensatory damages in the amount of **$5,401,243.05**.

### 2.    Punitive Damages

Functional Products requests punitive damages in the amount of $1,000,000.00 under O.C.G.A. § 16-14-6(c) of the Georgia RICO Act.  [Doc. 159 at 12].  As noted above, that statute provides "a cause of action for three times the actual damages sustained and, where appropriate, punitive damages."  As the Georgia Supreme Court has observed, punitive damages "serve the legislative purpose of imposing sanctions, whereas treble damages, which are authorized by the statute without reservation in every civil RICO action, further RICO's goal of compensating victims and providing incentive for 'private attorney generals' to initiate actions against those in violation of the Act."  *Williams General Corp. v. Stone*, 279 Ga. 418, 418, 614 S.E. 2d 758, 759 (2005).

Under Georgia law, punitive damages are awarded only in cases where the plaintiff establishes by clear and convincing evidence that the defendant's conduct

27

showed willful misconduct, malice, fraud, wantonness, oppression, or an entire want of care which would raise the presumption of conscious indifference to consequences. O.C.G.A. § 51-12-5.1(b).  Although punitive damages are capped by statute, the cap does not apply to cases of specific intent to cause harm.  *Speir v. Krieger*, 235 Ga. App. 392, 402, 509 S.E. 2d 684, 692 (1998).  Here, Functional Products alleges that "Defendants' actions have demonstrated willful misconduct, malice, fraud, wantonness, oppression, or that entire want to care which would raise the presumption of conscious indifference to consequences.  Defendants have further acted with specific intent to cause Functional Products harm."  [Second Am. Compl. ¶¶ 179-180].

Based on the record before the Court, the undersigned finds that the punitive damages requested are reasonable and supported by clear and convincing competent evidence.  The facts alleged in the Second Amended Complaint, which are deemed true as a result of Defendants' default, demonstrate, at a minimum, blatant fraud which cannot be countenanced in the marketplace.  Defendants knowingly misrepresented the possession of and readiness to deliver the chia seed ordered by Plaintiff, and exacerbated their fraud by demanding additional funds from Plaintiff before they would deliver what goods they already were obligated to produce (and still did not produce). Such misconduct should be punished, at a minimum, by an award of punitive damages,

28

and the amount sought is reasonable and not excessive. *Myers v. Central Fla. Inv., Inc.*
592 F.3d 1201, 1217-23 (11th Cir. 2010).

As a result, the undersigned **RECOMMENDS** that Plaintiff be awarded
**$1,000,000** in punitive damages.

### 3.      Attorney's Fees and Costs

Both the federal and Georgia RICO statutes authorize the recovery of attorney's
fees. *See* 18 U.S.C. § 1964(c) and O.C.G.A. § 16-14-6(c). As explained during the
hearing, Functional Products requests an updated total of $430,440.50 in attorney's
fees. [FTR Gold Recording, February 18, 2014, 10:21 AM and following; *see also*
Doc. 164 at 8-36; Doc. 159-3 (Declaration of Andrew Flake); Doc. 159-4]. Of this
amount, $5,890.00 is related to the failed deposition of Janitzek. *Id.* Functional
Products also requests costs necessarily incurred and taxable under 28 U.S.C. § 1920,
in the amount of $7,716.59, which it has modified down from its original request. *Id.*
Of this amount, $401.09 is related to preparation for the failed deposition of Janitzek.
*Id.*

"The starting point in fashioning an award of attorney's fees is to multiply the
number of hours reasonably expended by a reasonable hourly rate." *Loranger v.
Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424,

29

433 (1983)).  The product of the reasonable hourly rate and the reasonable hours expended is known as the lodestar calculation.  *See Davis v. Locke*, 936 F.2d 1208, 1215 (11th Cir. 1991).  Once the lodestar is calculated, this lodestar amount may be adjusted.  *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988).  However, such an adjustment is "rare" because "the lodestar method yields a fee that is presumptively sufficient to achieve this objective."  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

### a.    Reasonable Hours

The undersigned first examines the reasonableness of the hours.  "Fee applicants must exercise what the Supreme Court has termed 'billing judgment.' "  *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).  In other words, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary" because, for example, the case is overstaffed.  *Hensley*, 461 U.S. at 434.  The records submitted by Functional Products show that fifteen attorneys and nine non-attorneys performed work in this case, although the bulk of the work was performed by three attorneys: Andrew B. Flake, Anuj Desai, and J. Tucker Barr.  [Doc. 164 at 8-36; FTR Gold Recording, Feb. 18, 2014, 10:27 AM].

The undersigned does not find that this complicated matter was overstaffed. However, two of the attorneys–Aaron M. Danzig and Sara M. Lord–appear to have focused exclusively on a possible referral to the U.S. Attorney's Office.  Functional Products has not suggested that this parallel work contributed to the instant litigation. The undersigned finds that it is appropriate to exclude the hours billed by these two attorneys.  [Doc. 164, Danzig Entry Nos. 144, 170, 180, 215, 453, 523 (totaling $1,710.00); Lord Entry No. 451 (totaling $190.00)].  Accordingly, hours billed by other attorneys in connection with the parallel pursuit of a referral to the U.S. Attorney's Office also should be disregarded.  [*Id.*, Flake Entry Nos. 171, 454, 500, 599 (totaling $2,316.00); Desai Entry No. 196, 200 (totaling $891.00)].[6]  Thus, the entire amount by which the attorney's fees should be reduced in order to exclude this parallel work is $5,107.00.

As for the activities of the non-attorneys, fees for the same may be recovered "only to the extent they reflect tasks traditionally performed by an attorney and for which the attorney would customarily charge the client."  *Hyatt v. Barnhart*, 315 F.3d 239, 255 (4th Cir. 2002); *see also Allen v. U.S. Steel*, 665 F.2d 689, 697

---

[6]   Where time entries lump together work that was done on the matter of the referral to the U.S. Attorney's Office with other tasks, it is impossible to determine how much time was devoted to which task; therefore, the entire entry should be excluded.

31

(5th Cir. 1982) (paralegal fees only recoverable to the extent the paralegal performs work traditionally done by an attorney).  Examples of such work include "factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations and drafting correspondence," *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989), but not "clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers," *Johnson v. Georgia Hwy. Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989); *see also Weissinger v. Murray*, Civil Action File No. 1:06-CV-1544-TWT, 2009 WL 1971612, at *6 (N.D. Ga. July 2, 2009) ("As with attorneys' work, the hours expended by paralegals, law clerks, and other paraprofessionals are also compensable to the extent these individuals are engaged in work traditionally performed by an attorney.") (citations omitted).  Clerical work falls within the category of unrecoverable overhead expenses. *See Allen*, 665 F.2d at 697.

During the hearing, Counsel explained that the following individuals in the billing records are non-attorneys: paralegals Angela O. Chambliss, Andrea M. Gossman, and Janice F. Clark; e-discovery support staff David W. Bignault, Nilsa M.

Hughes,[7] and Lora A. Ramsey; document file clerk Cara A. Comparetta;[8] court runner Toussant S. Jackson; and summer associate Andrew C. Stevens. [FTR Gold Recording, Feb. 18, 2014, 10:30 AM; Doc. 164 at 8-32].

Based on review of the billing records provided, the undersigned concludes that it is appropriate to adjust the requested fees as follows. For Angela Chambliss, certain entries are either clerical in nature (for example, Bates labeling documents) or relate to the U.S. Attorney matter. [Doc. 164, Chambliss Entry Nos. 50, 55, 227, 247, 338, 343, 358, 426, 463, 596 (totaling $1,112.50)]. The same is true for Janice F. Clark. [*Id.*, Clark Entry Nos. 36, 94, 98, 112, 138, 164, 175, 183, 189,194,198, 201 (totaling $3,990.00)]. *See, e.g.*, *Barnes v. Zaccari*, No. 7:12-cv-89 (HL), 2013 WL 3864306, at *14 (M.D. Ga. July 24, 2013) (reducing hours billed where work included printing and organizing documents, organizing exhibits, and organizing transcripts).

Likewise, David W. Bignault, Nilsa M. Hughes, and Lora A. Ramsey all performed work related to information technology that is not recoverable as an attorney's fee, and Functional Products has not provided support to suggest that it

---

[7]     The entry for Ms. Hughes contains no charge to the client. [Doc. 164, Hughes Entry No. 345].

[8]     The entry for Ms. Comparetta contains no charge to the client. [Doc. 164, Comparetta Entry No. 33].

33

should be recoverable; indeed, Counsel for Functional Products frequently reduced the amounts billed to the client for the work of these individuals, resulting in no charge at all for the work of Ms. Hughes. As a result, the entries that the undersigned finds should be subtracted from the requested attorneys fees as follows: for Mr. Bignault, Entry Nos. 71, 131, 167, and 178 (totaling $975.00) and for Ms. Ramsey, Entry Nos. 647, 649, 666, and 671 (totaling $573.50).

For Toussant Jackson there are two entries, including one for traveling to this Court to deliver a check and pick up certified copies (Entry No. 143) and one for traveling to Cobb State Court to obtain copies (Entry No. 428). The undersigned finds that these activities are not properly categorized as attorney's fees; therefore, $82.50 should be subtracted from the requested attorneys fees.

The undersigned notes that work done by summer associate Andrew C. Stevens may be categorized as part of the attorney's fees because the descriptions reflect legal research, work traditionally performed by an attorney. *See Weissinger,* 2009 WL 1971612, at *6.

Finally, the undersigned has also considered whether work that related to the dismissed defendants Tarr and I-Grain, LLC is properly part of the attorney's fees to be paid by Janitzek and JITC. As explained by Functional Products's Counsel during

34

the hearing, [FTR Gold Recording, Feb. 18, 2014, 10:32 AM], and as alleged in the Second Amended Complaint, [Doc. 99 ¶¶ 88-89, 92], Tarr and I-Grain were part of Defendants' racketeering enterprise.  The undersigned therefore concludes that there is no meaningful distinction between work applicable to claims against Tarr and I-Grain and that applicable to claims against Defendants.

For the reasons discussed, based on the reasonableness of the hours, the undersigned concludes that the amount by which the requested attorney's fees should be reduced is $5,107.00 for attorney time plus $6,733.50 for non-attorneys' time, for a total reduction of $11,840.50.

The undersigned now considers whether the rates for the remaining individuals and work are appropriate.

### b.     Reasonable Rates

The reasonable hourly rate "is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."  *Loranger*, 10 F.3d at 781 (quoting *Norman*, 836 F.2d at 1299).  The party seeking attorney's fees has the burden of providing "satisfactory evidence" that his rate "is in line with prevailing market rates."  The amount that an attorney charges fee-paying clients is "powerful, and perhaps the best, evidence of his market rate; that

35

is most likely to be what he is paid as 'determined by supply and demand.' " *Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000). *But see Loranger*, 10 F.3d at 781 ("By 'satisfactory evidence,' we mean 'more than the affidavit of the attorney performing the work.' ") (quoting *Norman*, 836 F.2d at 1299). A court may consider, however, its own knowledge and experience concerning reasonable and proper fees. *Loranger*, 10 F.3d at 781.

The undersigned has reviewed the rates for the attorneys and non-attorneys and finds them to be reasonable for the Atlanta area. As discussed above, however, a reduction of $11,840.50 is appropriate. Therefore, the undersigned **RECOMMENDS** that Plaintiff be awarded an attorney's fee award of **$418,600.00**.

### c.    Costs

Finally, pursuant to 28 U.S.C. § 1920, Functional Products requests costs in the amount of $7,716.59, reduced from the amount it originally requested in its motion. [FTR Gold Recording, Feb. 18, 2014, 10:21 AM; Doc. 164 at 33-34]. Courts have concluded that § 1920 permits the recovery of the filing fee, photocopying fees, and service-of-process fees. *See U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 623 (11th Cir. 2000) (photocopying and service of process fees); *Wallace v. The Kiwi Group, Inc.*, 247 F.R.D. 679,687 (M.D. Fla. 2008) (indicating that the filing fee is a

36

recoverable cost under § 1920); *Corsair Asset Mgmt., Inc. v. Moskovitz*, 142 F.R.D. 347, 351 (N.D. Ga. 1992) (Forrester, J.) (same). The undersigned has reviewed the requested costs and concludes that they are appropriate.

Thus, the undersigned **RECOMMENDS** that Plaintiff be awarded costs in the amount of **$7,716.59**.

## IV.  Conclusion

For the reasons herein, the undersigned **RECOMMENDS** that Functional Products' motion for default judgment, [Doc. 159], be **GRANTED**, and that judgment be entered in favor of Plaintiff and against Defendants JITC and Janitzek, jointly and severally, on Counts I, II, III, IV, VI, VII, X, XI, and XIII of Plaintiff's Second Amended Complaint, [Doc. 99]. The undersigned **FURTHER RECOMMENDS** that Functional Products's request for damages be **GRANTED IN PART and DENIED IN PART**. Specifically, the undersigned **RECOMMENDS** that Functional Products:

- be awarded compensatory damages of $1,800,414.35, trebled to **$5,401,243.05**;

- **not** be awarded lost profits;

- be awarded **$1,000,000.00** in punitive damages;

- be awarded attorneys' fees of **$418,600.00**; and

- be awarded costs of **$7,716.59**.

37

The Clerk is **DIRECTED** to terminate the referral to the undersigned.

**IT IS SO RECOMMENDED and DIRECTED**, this the 8th day of May, 2014.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/8
2)