IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FUNCTIONAL PRODUCTS
TRADING, S.A.,

        Plaintiff and
        Counterclaim
        Defendant,

    v.

JITC, LLC and
ROBERT JANITZEK,

        Defendants,
        Counterclaim Plaintiffs
        and Third-Party
        Plaintiffs,

    v.

I-GRAIN, LLC and
LORIN A. TARR,

        Third-Party Defendants.

1:12-cv-0355-WSD

## OPINION AND ORDER

    This matter is before the Court on Magistrate Judge Alan J. Baverman's

Final Report and Recommendation ("R&R") [168] which recommends granting

Plaintiff's Motion for Default Judgment ("Motion") [159] against Defendants

JITC, LLC ("JITC") and Robert Janitzek ("Janitzek") (collectively, "Defendants").

The Magistrate Judge also recommended that default judgment be entered against

Defendants on Counts I, II, III, IV, VI, VII, X, XI, and XIII of Plaintiff's Second Amended Complaint [99] (the "Amended Complaint") and that Defendants be held jointly and severely liable.  The Magistrate Judge further recommended that Plaintiff be awarded compensatory damages (but not including lost profits), punitive damages, costs, and attorney's fees.

## I.   BACKGROUND

On February 2, 2012, Plaintiff Functional Products ("Plaintiff") filed a complaint seeking damages, replevin and specific performance against I-Grain, LLC ("I-Grain") and Lorin Tarr ("Tarr") for breach of an agricultural sales contract.[1]

---

[1]   Janitzek represented that he owned "land cultivated with high-quality black and white chia seed."  (Am. Compl. ¶ 146.)  Plaintiff believed that "the output of [the black and white chia seed] was high, and he already had 1,800 metric tons stored, with a yield of 2,500 metric tons . . . [that would be] available in April 2012."  (Id.)  On November 14, 2011, Plaintiff entered into a $4,480,200 agricultural sales contract (the "Sales Contract") with Defendants.  (Id. ¶ 2.)  Under the terms of the Sales Contract, Defendants agreed to sell Plaintiff black chia seed ("Chia Seed") "initially in the amount of 1,710 metric tons."  In the Sales Contract, "JITC represented that [Plaintiff] would be JITC's exclusive worldwide buyer and specified that the Chia Seed would be shipped from the Philippines and delivered in three shipments of thirty (30) containers each, with an individual container housing nineteen (19) metric tons of the Chia Seed.  For each shipment of thirty (30) containers, [Plaintiff] agreed to make a deposit payment of $224,010 and a balance payment of $1,269,390 for a total payment of $1,493,400 for each set of thirty (30) containers."  (Id. ¶ 29.).  Plaintiff rescinded the Sales Contract.

On December 15, 2011, Plaintiff also entered into a contract for the sale of white chia seed (the "White Seed Contract").  Plaintiff made an initial deposit

On February 24, 2012, Plaintiff filed its first amended complaint to add JITC and Janitzek as defendants.  (See [32].)

On July 31, 2012, I-Grain, LLC and Lorin Tarr settled with Plaintiff and were dismissed from the action.  (See [93].)

On September 7, 2012, Plaintiff filed its Second Amended Complaint [99] which included claims for fraud, violations of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), and violations of the Georgia Racketeer

---

provided for in the White Seed Contract.  Plaintiff never received "assurance of [Defendants'] ability and willingness to perform under the White Seed Contract." For this reason, Plaintiff rescinded the White Seed Contract.  (Id. ¶¶ 153-154.)

On January 26, 2012, Janitzek requested that Sandra Gillot ("Gillot"), employed by Plaintiff, meet with him to discuss the status and location of the Chia Seed.  At the meeting, Janitzek represented that he knew the location of the Chia Seed and that he was concerned that Tarr and I-Grain were "intending to sell the Chia Seed to others in violation of the exclusive dealing requirement and at a higher price."  (Id. ¶¶ 158-160.)  To prevent Tarr from violating the Sales Contract, Janitzek said that he "redacted the warehouse receipt" and that "his assistant would put originals of the necessary documents in the mail."  (Id. ¶¶ 161-162.)  At the meeting, Janitzek presented to Gillot a form of release (the "Release").  The Release "explicitly excluded Tarr and I-GRAIN, and that it was not intended to affect, but instead encourage Janitzek to help fulfill, the Sales Contract."  (Id. ¶¶ 162-163.)  Plaintiff never received the original documents that Janitzek committed to send, and he also never provided Plaintiff with information about the location of the Chia Seed (or any of the Chia Seed that he claimed to have stored in warehouses).  (Id. ¶¶ 165.)  Plaintiff asserts that the "[R]elease is not enforceable on its face" because Defendants knew they were making false representations.  (Id. ¶¶ 166.)

Influenced and Corrupt Organizations Act ("Georgia RICO").  Plaintiff seeks

compensatory damages, attorney's fees, punitive damages and declaratory relief.

(See [99].)[2]

On September 21, 2012, Defendants filed their Answer, Counterclaim,

Impleader, and Crossclaim (the "Answer").  (See [107].)  Defendants included in

their Answer counterclaims against Plaintiff, and made crossclaims against I-Grain

and Tarr.

On November 11, 2012, Plaintiff filed an Expedited Motion to Compel

Deposition of Defendants and for an Award of Sanctions (the "Motion to

Compel").[3]  (See [117].)  On December 21, 2012, the Magistrate Judge held a

---

[2]     Specifically, Functional Products asserts the following claims against
Defendants in the Amended Complaint: (1) for participating in the affairs of an
enterprise through a pattern of racketeering activity, in violation of 18 U.S.C.
§ 1962(c) of RICO (Count I); (2) for participating in conduct that constitutes a
RICO conspiracy, in violation of 18 U.S.C. § 1962(d) (Count II); (3) for violating
the Georgia RICO under O.C.G.A. § 16-4-4(b) (Count III); (4) for participating in
conduct that constitutes a RICO conspiracy in Georgia, in violation of O.C.G.A.
§ 16-4-4(c) (Count IV); (5) for fraud and conspiracy to commit fraud (Count V);
(6) for declaratory judgment/rescission of sales contracts based upon fraudulent
inducement (Count VI); (7) for declaratory judgment/rescission of release based
upon fraudulent inducement (Count VII); (8) for fraudulent transfers, in violation
of O.C.G.A. § 18-2-75 (Count VIII); (9) for constructive trust (Count IX); (10) for
punitive damages (Count X); (11) for attorneys' fees and expenses of litigation
(Count XI); (12) for breach of contract (XII); and (13) for piercing the corporate
veil and alter ego (Count XIII).

[3]     Plaintiff requested that Janitzek, a German citizen residing in the

hearing on the Motion to Compel.  The Magistrate Judge ordered Janitzek to appear for a deposition at his attorneys' Atlanta office on a date between February 4, 2013, and February 8, 2013.  (See [131] at 2.)  Finding that sanctions were not yet warranted, the Magistrate Judge warned that if Janitzek failed to appear for a deposition in February 2013, he would recommend that the Court strike Defendants' Answer and enter a default judgment against them.  (See [142] at 5; see also [144] at 4.)

On February 6, 2013, Janitzek again failed to appear to be deposed.  (See [142] at 5-6.)[4]  On February 21, 2013, Plaintiff filed its Motion for Sanctions.  (See [142].)

---

Philippines, be deposed.  The deposition of Janitzek was scheduled for a date in August 2012.  To accommodate Janitzek, the deposition was rescheduled for October 2012.  (See [154] at 2.)  The plan was again changed in September 2012, when Janitzek indicated that he would only be able to be deposed in Atlanta by video conference in October 2012.  (See id. at 3.)  Janitzek's deposition was ultimately rescheduled for November 7, 2012, and it was agreed that Janitzek would be deposed in person in Atlanta.  (Id.)  On November 5, 2012, two days prior to the deposition, Defendants' counsel informed Plaintiff's counsel that Janitzek was ill and was unable to travel to Atlanta.  (See [142] at 4.)

[4]     On this occasion, Defendants explained that "a longstanding[,] trusted family friend with apparent connections to the United States [g]overnment" had warned Janitzek that a certain individual who is an "assistant" to Plaintiff's case "had arranged for Janitzek's unlawful incarceration and detainment."  (See [144] at 3-4.)  Based on this information, counsel for Defendants stated that Janitzek feared for his and his family's life.

On June 7, 2013, the Magistrate Judge issued his R&R [154] recommending that the Court grant Plaintiff's Motion for Sanctions.  On August 20, 2013, the Court adopted the Magistrate Judge's R&R.  (See [158].)  The Court also directed the Clerk to strike Defendants' Answers, dismiss Defendants' counterclaims, and enter default against Defendants.

On September 16, 2013, Plaintiff moved for default judgment against Defendants.  Plaintiff requests that the Court:

1. Enter judgment on Counts I, II, III, IV, VI, VII, X, XI, and XIII of the Amended Complaint;
2. Declare that the following agreements are invalid and rescinded on account of Defendants' fraud: (i) the November 14, 2011, Sales Contract; (ii) the December 15, 2011, White Seed Contract; and (iii) the January 27, 2012, Release;
3. Award compensatory damages in the amount of $5,401,243.05.00;
4. Award punitive damages in the amount of at least $1,000,000.00;
5. Award reasonable attorneys' fees in the amount of $432,760.00;
6. Award taxable costs in the amount of $9,601.62;
7. Award [Plaintiff] post-judgment interest as provided by Georgia law;
8. Hold Defendants jointly and severally liable for the Court's judgment; and
9. Award [Plaintiff] such other and further relief as the Court deems just, equitable and proper."[5]

(See Mot. at 14-15.)

---

[5] In the interest of efficiency and judicial economy, Plaintiff dismissed Counts V, VIII, IX, XII.  Plaintiff also dismissed its request for pre-judgment interest. (See Mot. at 15.)

On January 9, 2014, the Magistrate Judge reviewed Plaintiff's Motion and ordered a hearing pursuant to Rule 55(b)(2)(C) of the Federal Rules of Civil Procedure.[6]  The hearing was conducted on February 18, 2014.   At the hearing, Plaintiff presented affidavit testimony and documents to support its requested damages, attorneys' fees, and costs.  Defendants and Defendants' counsel did not attend the hearing.

On May 8, 2014, the Magistrate Judge issued his R&R recommending that Plaintiff's Motion be granted.  The Magistrate Judge also recommended that default judgment be entered against Defendants on Counts I, II, III, IV, VI, VII, X, XI, and XIII of the Amended Complaint and that Defendants be held jointly and severely liable.  The Magistrate Judge further recommended that Plaintiff be awarded compensatory damages (not including lost profits), punitive damages, costs, and attorney's fees.  Neither party filed objections to the R&R.

---

[6]     The Court has authority and discretion to hold a hearing to establish the truth of any allegation or to investigate any other matter.  Fed. R. Civ. P. 55(b)(2)(C), (D); see also Quirindongo Pacheco v. Rolon Morales, 953 F.2d 15, 16 (1st Cir. 1992).

## II.   DISCUSSION

### A.   <u>Legal Standards</u>

#### 1.   <u>Review of a Magistrate Judge's R&R</u>

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1) (2006); <u>Williams v. Wainwright</u>, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  In the absence of objections, the Court reviews the Magistrate Judge's findings and recommendations for plain error.  <u>United States v. Slay</u>, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

#### 2.   <u>Motion for Default Judgment</u>

Rule 55(b) of the Federal Rules of Civil Procedure governs the entry of default judgments:

> (1)  *By the Clerk.*  If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
> (2)  *By the Court.*  In all other cases, the party must apply to the court for a default judgment. . . .  If the party against whom a default

8

judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing.  The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to:

> (A)  conduct an accounting;
> (B)  determine the amount of damages;
> (C)  establish the truth of any allegation by evidence; or
> (D)  investigate any other matter.

"The entry of a default judgment is committed to the discretion of the district court . . . ."  Hamm v. DeKalb Cnty., 774 F.2d 1567, 1576 (11th Cir. 1985) (citing 10A Charles Alan Wright et al., Federal Practice and Procedure § 2685 (1983)). When considering a motion for entry of default judgment, a court must investigate the legal sufficiency of the allegations and ensure that the complaint states a plausible claim for relief.  Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1278 (11th Cir. 2005); Bruce v. Wal-Mart Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988).  A "district court has the authority to enter default judgment for failure to prosecute with reasonable diligence or to comply with its orders or rules of procedure."  See Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985) (citations omitted); see also U.S. v. Inter-Amn. Shipping Corp., 455 F.2d 938, 940 (5th Cir. 1972) ("[n]ormally a defendant's failure to defend results in default judgment upon motion of the plaintiff") (citing Fed. R. Civ. P. 55)).

Courts must also ensure they have subject-matter jurisdiction over the case and personal jurisdiction over the defaulting parties, and that the factual allegations state a cause of action.  See, e.g., Dennis Garber & Assocs. v. Pack-Tech Int'l Corp., 115 F.3d 767, 772 (10th Cir.1997); Bruce, 699 F.Supp. at 906.[7]

---

[7]     The Magistrate Judge concluded that subject matter jurisdiction in this action is proper because (1) Plaintiff asserts claims arising under federal law and (2) the Court can exercise supplemental jurisdiction over Plaintiff's state law claims.  See 28 U.S.C. § 1367(a) (conferring district courts with supplemental jurisdiction over "claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy").  The Court finds no plain error in this finding.  The Magistrate Judge also concluded that personal jurisdiction over Defendants is proper because (1) JITC is a limited liability company in Georgia and (2) Janitzek, an alleged resident of Germany, has purposefully established minimum contacts in Georgia sufficient to satisfy the Due Process Clause of the Fourteenth Amendment.  The Complaint asserts that Janitzek transacted business in Georgia by exercising his ownership in JITC and through his alleged fraudulent business enterprise conducted through JITC.  The Court finds no plain error in this finding.  See O.C.G.A. § 9-10-91 ("A court of [Georgia] may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she: (1) Transacts any business within this state; (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state . . . .").

B.    Analysis

1.    Legal Standards for RICO and Georgia RICO Claims

To state a claim for a violation of the federal RICO statute, a plaintiff has the burden of showing that "(1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce." See McCulloch v. PNC Bank, Inc., 298 F.3d 1217, 1225 (11th Cir. 2002) (citing 18 U.S.C. §§ 1962(a)-(c)).  The Georgia RICO Act is modeled on the federal RICO statute and, in the absence of Georgia authority, Georgia courts often look to federal decisions for guidance on the interpretation of similar provisions of the Georgia RICO Act.[8]  Williams General Corp. v. Stone, 279 S.E.2d 428, 430 (Ga.

---

[8]    The Court notes that RICO claims generally must be pled with the increased specificity required by Rule 9(b) of the Federal Rules of Civil Procedure.  See Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1316 (11th Cir. 2007); see also Georgia ex rel. Bowers v. Dairymen, Inc., 813 F. Supp. 1580, 1582–83 (S.D. Ga. 1991) (applying Rule 9(b) to both federal and Georgia RICO claims).  To satisfy Rule 9(b), a RICO complaint must state "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud."  Ambrosia, 482 F.3d at 1316–17.  Plaintiff's Complaint satisfies this standard.  For example, Plaintiff alleges that "JITC is an 'enterprise' engaged in and whose activities affect interstate commerce within the meaning of 18 U.S.C. § 1961(4) . . . and Janitzek, Tarr, Rivera, [I-Grain], and JITC form an association-

2005).

Under the Georgia RICO act, it is "unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money."  See O.C.G.A. § 16-14-4(a).  A "pattern of racketeering activity" means "at least two acts of racketeering activity in furtherance of one or more incidents, schemes, or transactions" that are interrelated.  Id. § 16-14-3(8)(A).  A "racketeering activity" is the commission, attempt, solicitation of another, or coercing of another to commit a "crime which is chargeable by indictment" under one of forty categories of offenses.  Id. § 16-14-3(9)(A)(i)-(xl).

---

in-fact enterprise directed by Janitzek . . . [t]he common purpose[] of the JITC Enterprise . . . is to obtain money from unsuspecting buyers for product that is never intended to, and is not, delivered, and to engage in other fraudulent international transactions."  (See Am. Compl. ¶ 88.)  Plaintiff identifies JITC as an "enterprise," the existence of which is a central element of a RICO claim that must be pled with specificity.  See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161–62 (2001) (holding that a RICO plaintiff "must allege and prove the existence of . . . an 'enterprise' that is not simply [the defendant] referred to by a different name"); Ambrosia, 482 F.3d at 1316 (applying Rule 9(b)).  The Court concludes that Plaintiff's proposed RICO claims satisfy the pleading requirements of Rule 9(b).

To have standing to bring a civil claim under Georgia's RICO Act, a plaintiff must not only show a pattern of racketeering activity, but also "a direct nexus between at least one of the predicate acts listed under the RICO Act and the injury [the plaintiff] purportedly sustained." Schoenbaum Ltd. Co. v. Lenox Pines, LLC, 585 S.E.2d 643, 655 (Ga. Ct. App. 2003) (internal quotation marks omitted). "To establish this nexus, the plaintiff must show that one of the predicate acts directly harmed it, not a third party." Id.

> i.   Analysis of Counts I, II, III, and IV of the Amended Complaint

Plaintiff alleges in the Amended Complaint that JITC is a racketeering enterprise engaged in and whose activities affect interstate commerce. (See Am. Compl. ¶¶ 88, 109.)  The Amended Complaint also asserts that Defendants, along with others, formed a second association-in-fact enterprise, and that Janitzek actively participates in and manages these enterprises. (Id.)  Plaintiff further alleges that the purposes of these enterprises are to obtain money from unsuspecting victims for goods that were not delivered and were never intended to be delivered. (Id. ¶ 88.)  The Amended Complaint asserts with specificity examples of Defendants' actions in furtherance of its fraudulent scheme.[9]  The

---

[9]   In the Amended Complaint, Plaintiff asserts that Defendants "intentionally and willingly devised and participated in a scheme to defraud [Plaintiff] in order to

13

Amended Complaint also alleges, with specificity, that Plaintiff was injured financially as a proximate cause of Defendants' RICO violations.  (See generally id. ¶¶ 121-124.)

The Magistrate Judge found that the allegations asserted in the Amended Complaint provide a sufficient basis to allow Plaintiff to recover on its federal and Georgia RICO claims.  The Court finds no plain error in the Magistrate Judge's findings or recommendations that the RICO claims alleged provide a sufficient

---

deprive [Plaintiff] of its asserts, and knowingly and intentionally used the interstate mails, in violation of 18 U.S.C. § 1341, and interstate wires in violation of 18 U.S.C. § 1343, as integral and essential devices to advance, further, and facilitate that scheme."  (Am. Compl. at ¶ 114.)  Some examples Plaintiff asserts in the Amended Complaint are that: "(a) Janitzek caused the United States mails and wires to be used to receive, send, execute, and/or transfer payment to I-GRAIN on or about November 18, 2011; (b) Tarr caused the United States mails and wires to be used to receive, send, execute, and/or transfer payment to Janitzek on our about the time period between January 23, 2012, through February 9, 2012; (c) [o]n January 25, 2012, Janitzek caused an electronic mail from the fictitious 'Tom Grunter' to be sent, forwarding a falsified warehouse receipt, knowing that [Plaintiff] would rely on the receipt as proof of the Chia Seed's physical presence of [sic]the United States; (d) [f]rom at least October 2011 to present, on information and belief, Janitzek has used JITC's bank account at EastWest Bank in Atlanta, Georgia, to distribute to himself and to other insiders the proceeds of his fraudulent activity; (e) [o]n November 21, 2011, Janitzek caused JITC to wire $7,000 from EastWest Bank to an individual in the Phillippines named Jose O. Riveria . . . ."  (See generally id. ¶¶ 90-128.)

basis to approve an award of damages.[10]  Plaintiff's Motion against Defendants

with respect to Counts I, II, III, and IV is granted.

        2.     <u>Declaration Invalidating Contracts and Liability Release
           (Counts VI and VII)</u>

       Counts VI and VII of the Amended Complaint request a declaration that

(1) the November 14, 2001, Sales Contract; (2) the December 15, 2001, White

Seed Contract; and (3) the January 27, 2012, Release, be declared invalid and

---

[10]     It is unlawful to conspire to violate the substantive provisions of Georgia's RICO Act.  O.C.G.A. § 16-14-4(c).  A defendant may be found liable for violating Section 16-14-4(c) if he knowingly and willfully joins a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts. <u>Southern Intermodal Logistics, Inc. v. D.J. Powers Co., Inc.</u>, 10 F.Supp.2d 1337, 1360-61 (S.D. Ga. 1998) (examining Section 16-14-4 using federal RICO case law).  A defendant therefore need not overtly commit any predicate acts, so long as he knowingly and willfully joins a conspiratorial scheme which contemplates that a co-conspirator will do so.  <u>Salinas v. United States</u>, 522 U.S. 52, 64 (1997) (indeed, an individual "may be liable for conspiracy even though he was incapable of committing the substantive offense").

     The conspiratorial scheme alleged by Plaintiff involved multiple acts of mail and wire fraud.  The particularity requirement for fraud claims under Rule 9(b) of the Federal Rules of Civil Procedure also applies to fraud-based state RICO claims, such as this one, brought in a federal court.  <u>See</u> <u>Am. United Life Ins. Co. v. Martinez</u>, 480 F.3d 1043, 1064 (11th Cir. 2007).

     Plaintiff is required to allege adequately that Defendants knowingly and willfully joined a conspiracy to commit two or more predicate offenses in furtherance of the alleged RICO scheme.  <u>See</u> <u>Cox v. Administrator U.S. Steel & Carnegie</u>, 17 F.3d 1386, 1410 (11th Cir. 1994) (finding that liability for federal RICO conspiracy requires knowledge of and voluntary participation in an agreement to do an illegal act).  The Magistrate Judge recommended that default judgment be entered against Defendants on Counts II and IV, and the Court finds no plain error in this recommendation and the findings on which it is based.

rescinded as part of Defendants' fraudulent conduct.[11]  A party asserting a claim under the Declaratory Judgment Act must demonstrate that the claim presents an "actual controversy" within the jurisdiction of the Court. [12]  See 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); see also Cardinal Chem. Co. v. Morton Int'l, Inc., 508 U.S. 83, 95 (1993).  To demonstrate an actual controversy, Plaintiff must allege facts showing a real and immediate dispute between the parties justifying the resort to declaratory relief.  See Emory v. Peeler, 756 F.2d 1547 (11th Cir. 1985).  "The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred.  Additionally, the continuing controversy may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."  Id. at 152.

---

[11]     These documents are attached to the Declaration of Sandra Guillot (159.2)

[12]     The Magistrate Judge noted that Plaintiff does not identify the legal basis for its declaratory judgment request.  The Magistrate Judge presumed that Plaintiff based its request on the Declaratory Judgment Act, 22 U.S.C. § 2201.  The Court finds no plain error in this finding or conclusion.

The Magistrate Judge found that the Amended Complaint establishes that Plaintiff rescinded the two sales contracts, but that Defendants continued to claim their validity.  (See Am. Compl. ¶¶ 146-156.)  Plaintiff also asserts in the Amended Complaint that the release also was part of Defendants' fraudulent conduct.  (See id. ¶¶ 158-167.)  The Magistrate Judge found, after reviewing the allegations in the Amended Complaint and the documents themselves, that Plaintiff was entitled to a declaratory judgment invalidating the two sales contracts and the release of claims. The Court finds no plain error in the Magistrate Judge's findings or recommendations.  Plaintiff's Motion against Defendants with respect to Counts VI and VII is granted.

3.    Legal Standard for Piercing the Corporate Veil and Alter Ego

"An inherent purpose of incorporation is insulation from liability.  A corporation possesses a legal existence separate and apart from that of its officers and shareholders so that the operation of a corporate business does not render officers and shareholders personally liable for corporate acts."  Derbyshire v. United Builders Supplies, Inc., 392 S.E.2d 37, 40 (Ga. Ct. App. 1990).  Georgia law permits corporations to establish wholly-owned subsidiary corporations and to control and use those subsidiary corporations to promote the parent corporation's own ends.  See id.; Amason v. Whitehead, 367 S.E.2d 107, 108 (Ga. Ct. App.

1988).  "One reason the law establishes separate corporate identity is so that a corporation *can* hold itself independently apart and insulated from the existence of another related corporation even while it uses the related corporation or controls it to promote its own ends."  Boafo v. Hosp. Corp. of Am., 338 S.E.2d 477, 479 (Ga. Ct. App. 1985).

Georgia courts will, in appropriate circumstances, apply equitable principles to disregard the corporate entity—otherwise known as piercing the corporate veil or the alter ego doctrine—and hold a corporation's shareholder or shareholders responsible for the corporation's debts.  See, e.g., Amason, 367 S.E.2d at 108.

> The question is whether the corporation serves as the alter ego or business conduit of its owner.  To establish this, "it must be shown [1] that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; [2] that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and [3] [that] to adhere to the doctrine of corporate entity would promote injustice or protect fraud."

Derbyshire, 392 S.E.2d at 40 (quoting Trans-American Commc'ns v. Nolle, 214 S.E.2d 717, 719 (1975)); see also Dearth v. Collins, 441 F.3d 931, 934-35 (11th Cir. 2006) (quoting McLean v. Cont'l Wingate Co., 442 S.E.2d 276, 279 (Ga. Ct. App. 1994)).  This standard is purposefully difficult to meet, see United States v. Fidelity Capital Corp., 920 F.2d 827, 837 (11th Cir. 1991), and courts should

exercise "great caution" before allowing a corporation's veil to be pierced, Amason, 367 S.E.2d at 108.

An essential component of piercing the corporate veil is "the idea that the corporate entity has been used as a subterfuge and to observe it would be to work an injustice." Raynor v. American Ins. Co., 337 S.E.2d 43, 45 (Ga. Ct. App. 1985). Georgia courts "do not disregard that separate identity unless it serves to promote injustice or fraud." Boafo, 338 S.E.2d at 479. In other words, there "'must be evidence of abuse of the corporate form.'" Soerries v. Dancause, 546 S.E.2d 356, 358 (Ga. Ct. App. 2001) (quoting J-Mart Jewelry Outlets v. Standard Design, 462 S.E.2d 406 (Ga. Ct. App. 1995)). Different terms are used, such as "sham," "wrong," or "abuse," but the general idea is that there must be some sort of culpable conduct between the corporation and the shareholder that is inconsistent with the corporation's separate existence and that is injurious to the corporation's ability to meet the corporation's obligations to creditors. Id.

Sole ownership of a corporation by another corporation is not a factor in the piercing analysis. Derbyshire, 392 S.E.2d at 40. Nor does it matter that "'the sole owner uses and controls [the corporation] to promote his ends." Id. (quoting Amason, 367 S.E.2d at 108). It also is not sufficient that a subsidiary corporation was created to protect the parent company from liability, Boafo, 338 S.E.2d at 479,

or that the subsidiary "provides and partakes of services offered or required by related corporations," Brunswick Mfg. Co. v. Sizemore, 359 S.E.2d 180, 182 (Ga. Ct. App. 1987).  Generally, there must be evidence that the corporate owner used corporate funds for personal expenses,[13] Scott Bros., Inc. v. Warren, 582 S.E.2d 224, 227 (Ga. Ct. App. 2003); or that the owner bled or siphoned the assets of the debtor corporation to another corporation that the owner controls, id; or that the owner passed the owner and the owner's corporations off to third parties as a single entity, Derbyshire, 392 S.E.2d at 41; see also Scott Bros., 582 S.E.2d at 227 (citing Derbyshire).

The doctrines of limited liability and of piercing the corporate veil are often discussed in terms of corporations, but they apply to LLCs, as well.  See O.C.G.A. § 14-11-303(a).  "'Just as the so-called 'corporate veil' protects an individual shareholder of a corporation from personal liability for the debts of the separate corporate entity (so long as the corporate forms are maintained), so is a member of [an] LLC 'veiled' from personal liability for the debts of the separately maintained

---

[13]    The Magistrate Judge found that the exhibits attached the Plaintiff's Motion appear to reflect that JITC's corporate account was used to pay for personal expenses.  The Court finds no plain error in this finding.  (See [126] at 23-24 (grocery purchases); (id. at 25 (jewelry purchases); (id. at 123-26 (immediate wire transfers to Janitzek for his benefit once funds from Plaintiff were received by JITC)).

LLC entity.'" Milk v. Total Pay & HR Solutions, Inc., 634 S.E.2d 208, 212 (Ga. Ct. App. 2006) (quoting Bonner v. Brunson, 585 S.E.2d 917, 918 (Ga. Ct. App. 2003)).

Courts in Georgia apply Georgia law when determining whether to pierce an entity's corporate veil for the benefit of a third-party creditor. See Multi-Media Holdings, Inc. v. Piedmont Ctr., 15 LLC, 583 S.E.2d 262, 264-65 (Ga. Ct. App. 2003). The same principles under Georgia law that apply to piercing the veil of a corporation also apply to piercing an LLC's veil. See O.C.G.A. § 14-11-314 ("This chapter [on LLCs] does not alter any law with respect to disregarding legal entities."); Bonner, 585 S.E.2d at 918 (applying standards from corporate veil-piercing cases to case involving piercing veil of an LLC).

i.    Analysis of Count XIII of Plaintiff's Amended Complaint

Count XIII of the Amended Complaint requests that the Court pierce the corporate veil of JITC and hold Defendants jointly and severally liable. Plaintiff alleges in the Amended Complaint:

- "Janitzek, acting in concert and/or separately, has abused the corporate form and improperly utilized JITC as a corporate subterfuge to evade creditors and perpetuate fraud and, on information and belief, has utilized JITC as a mere instrumentality for the transaction of his own affairs. Further, Janitzek used JITC as an alter ego for these same purposes." (Am. Compl. ¶ 188.)

21

- "On information and belief, JITC was substantially undercapitalized from the time of its inception until it received funds based upon Defendants' fraud on [Plaintiff]." (Id. at ¶ 189.)

- "On information and belief, both [sic] JITC is financially unstable and likely insolvent. It has no independent financing." (Id. at ¶ 190.)

- "On information and belief, Janitzek has looted JITC, immediately transferring amounts paid by [Plaintiff] to himself personally and to other insider(s). To the extent those transfers are determined to be fraudulent, [Plaintiff] reserves all of its rights to assert that they should be avoided." (Id. at ¶ 191.)

- "In order to accomplish the fraud described in this [Amended Complaint], Defendants have operated as a de facto enterprise, working as if they were one business with common ownership, common management, and common personnel, and with rapid movement of funds from one entity to the other. [Plaintiff] expects that discovery will confirm other entities, for example, Janitzek's Philippines-based Janitzek International Trading Corporation, that have in concert with Janitzek and JITC, served as part of this de facto enterprise and scheme. [Plaintiff] reserves the right, upon such discovery, to add those entities as party defendants." (Id. at ¶ 192.)

- "JITC's corporate veil should be pierced and its corporate form disregarded by virtue of actions taken by Janitzek to render it a mere alter ego of Janitzek, and by virtue of the fact that Janitzek has used and is attempting to use the corporate form of JITC to accomplish unjust and fraudulent results." (Id. at ¶ 193.)

- "In light of the above facts, [Plaintiff] requests that the Court disregard the separate existence of JITC, and hold Janitzek jointly and severally liable for all damages incurred by [Plaintiff] as a result of any actions or omissions by JITC." (Id. at ¶ 194.)

The Magistrate Judge evaluated whether the Amended Complaint properly pleaded Plaintiff's claim seeking to pierce the corporate veil, because the Magistrate Judge found that the Amended Complaint alleged facts with less specificity than Plaintiff's allegations in its other counts.  Some of Plaintiff's allegations in Count XIII allege facts on "information and belief."[14]  The Magistrate Judge reasoned that Plaintiff's allegations seeking to pierce the corporate veil are "barely but just sufficient enough to qualify under Nishimatsu and permit entry of a default judgment in its favor on the piercing claim" for two reasons.  (See [168] at 20.)  The Magistrate Judge first found that "in this case, Defendants did not file a motion to dismiss pursuant to Twombly or Iqbal, and

---

[14]    In analyzing whether Plaintiff is entitled to default judgment on its count to pierce the corporate veil, the Magistrate Judge first focused on Nishimatsu's requirement of "well-pleaded allegations of fact."  See Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009) ("A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact.'" (quoting Nishimatsu Constr. Co., v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975))).  The Magistrate Judge went on to explain that "these default judgment principles raise the question of how the Supreme Court's recent decisions in Ashcroft v. Iqbal, 566 U.S. 662 (2009), and Bell Atlanta Corp. v. Twombly, 550 U.S. 544 (2007), affect, if at all, [the] Court's consideration of Plaintiff's [Motion]."  (See [168] at 18).  The Magistrate Judge found that several recent unreported district court opinions, including some within this circuit, have applied Twombly and Iqbal to default judgment inquiries.  See, e.g., Pierre v. Venus Satellite, Inc., No. 3:12-cv-343, 2014 WL 103212, at *4 (M.D. Fla. Jan. 8, 2014).  The Court finds no plain error in the Magistrate Judge's findings.

instead answered Plaintiff's [Amended Complaint], denying Plaintiff's allegations seeking to pierce the corporate veil."  (See id. at 20-21).  The Magistrate Judge concluded that the claim was "definitive and clear enough for Defendants—who at the time were represented by experienced and competent counsel—to formulate an answer."  (Id.)

Second, the Magistrate Judge found that the Court struck Defendants' Answer because of their failure to comply with the Court's discovery orders.  For this reason, the Magistrate Judge found that "Plaintiff cannot be faulted for not providing further detailed allegations about Defendants' disregard of the corporate structure—information peculiarly within the possession and control of Defendants—since Defendants failed to comply with [the] lawful orders of the Court to be deposed."  (Id. at 21)  The Court finds no plain error in any of the Magistrate Judge's findings or recommendations.  See Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2nd Cir. 2010) (citations omitted) ("[t]he Twombly plausibility standard . . . does not prevent a plaintiff from 'pleading facts alleged "upon information and belief" where the facts are peculiarly within the possession and control of the defendant . . . , or where the belief is based on factual information that makes the inference of culpability plausible . . . .'").

The Magistrate Judge concluded that the Court should pierce the corporate veil and hold Defendants jointly and severally liable for Count XIII, even though Plaintiff's allegation in Count XIII barely qualified as a "well-pleaded allegation of fact" under the standard of <u>Nishimatsu</u>.  The Court finds no plain error in the Magistrate Judge's well-reasoned conclusion, and Plaintiff's Motion with respect to Count XIII is granted.

      4.    <u>Compensatory Damages (for violation of the federal RICO and Georgia RICO Acts in Counts I, II, III, and IV)</u>

Plaintiff requests $10,206,826.05 in total compensatory damages under the RICO claims and for lost profits.[15]  The Magistrate Judge recommended that Plaintiff be awarded compensatory damages under Plaintiff's federal and Georgia RICO claims in the amount of $1,800,414.35, which when trebled amounts

---

[15]    Plaintiff requests $1,601,861.00 in lost profits.  Even though Plaintiff stated it was not seeking lost profits in its Motion, the Magistrate Judge noted that, at the hearing, Plaintiff said it would pursue damages based on lost profits.  The Magistrate Judge recommended that Plaintiff not be awarded lost profits in the amount of $1,601,861, which when trebled amounts to $4,805,583.00, because critical data is missing from the record.  <u>See</u> <u>Kitchen v. Hart,</u> 704 S.E.2d 452, 458 (Ga. Ct. App. 2010) (holding that, when recovering lost profits, there must be "definite, certain and reasonable data for their ascertainment").  The Court finds no plain error in this finding.

to $5,401,243.05.[16]  <u>See</u> 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of [the federal RICO Act] may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee . . . ." ); O.C.G.A. § 16-14-6(c).  The Court finds no plain error in this finding.  Plaintiff is entitled to compensatory damages in the amount of $5,401,243.05.

### 5.    Punitive Damages (Count X)

"Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences."  O.C.G.A . § 51-12-5.1(b).  "Punitive damages cannot be awarded in the absence of any finding of compensatory damages."  <u>Martin v. Martin</u>, 600 S.E.2d 682, 683 (Ga. Ct. App. 2004).

---

[16]    The $1,800,414.35 compensatory damages amount represents the funds Plaintiff paid to Defendants under the Sales Contract and the White Seed Contract, for which no seed was received.

The Magistrate Judge found that the facts asserted in the Amended Complaint, which are deemed true as a result of Defendants' default, demonstrate, at a minimum, "blatant fraud which cannot be countenanced in the marketplace." (See [168] at 28.)  The Magistrate Judge recommended that Plaintiff be awarded $1,000,000.00 in punitive damages.  The Court finds no plain error in the Magistrate Judge's finding that default judgment be entered on Count X and further finds that Plaintiff is entitled to punitive damages in the amount of $1,000,000.00.

### 6.   Attorneys' Fees and Costs (Count XI)

Plaintiff requests $430,440.50 in attorney's fees.[17]   Both the federal and Georgia RICO statutes authorize the recovery of attorney's fees.  See 18 U.S.C. § 1964(c), and O.C.G.A. § 16-14-6(c).  Plaintiff shows that fifteen attorneys and nine non-attorneys performed work in this case, although the majority of the work was performed by Andrew B. Flake, Anuj Desai, and J. Tucker Barr.  The Magistrate Judge reviewed the time and cost records submitted by Plaintiff and found the hours worked, after some adjustment,[18] to be reasonable within the

---

[17]   This amount was updated at the hearing.

[18]   The Magistrate Judge found that the amount by which the requested attorneys' fees should be reduced is $5,107.00 for attorney time plus $6,733.50 for

Atlanta legal services market considering the time spent to provide the services rendered.  The Court finds no plain error in the Magistrate Judge's finding that the attorney's fees claimed by Plaintiff are reasonable and that default judgment be entered in favor of Plaintiff on Count XI, and further finds that Plaintiff is entitled to $418,600.00 in attorney's fees.

The Magistrate Judge further recommended that Plaintiff be awarded costs in the amount of $7,716.59.  The Court finds no plain error in this finding.  Rule 54 of the Federal Rules of Civil Procedure governs the award of costs.  It provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs."  Fed. R. Civ. P. 54(d)(1).  Rule 54 does not define "costs."  See id.  However, in 28 U.S.C. § 1920, fees and expenses that may be taxed as costs include such items as "[f]ees of the clerk and marshal," "[f]ees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case," and "[f]ees for exemplification and copies of papers necessarily obtained for use in the case."  28 U.S.C. § 1920.

## III.  CONCLUSION

Accordingly, for the foregoing reasons,

---

non-attorneys' time, for a total reduction of $11,840.50.  The Court finds no plain error in the Magistrate Judge's finding.

**IT IS HEREBY ORDERED** that Magistrate Judge Alan J. Baverman's Final Report and Recommendation [168] is **ADOPTED**.

**IT IS FURTHER ORDERED** Plaintiff's Motion for Default Judgment [159] against Defendants JITC, LLC and Robert Janitzek is **GRANTED** with respect to Counts I, II, III, IV, VI, VII, X, XI, and XIII of the Amended Complaint.[19]

**IT IS FURTHER ORDERED** that Plaintiff's request for damages is **GRANTED IN PART AND DENIED IN PART**.  It is **GRANTED** with respect to Plaintiff's request for (i) $5,401,243.05 in compensatory damages (for violation of the federal RICO and Georgia RICO Acts in Counts I, II, III, and IV); (ii) $1,000,000.00 in punitive damages (Count X); (iii) $418,600.00 in attorney's fees (Count XI); and (iv) $7,716.59 in costs (Count XI).  It is **DENIED** with respect to Plaintiff's request for an award of lost profits.

**SO ORDERED** this 29th day of July, 2014.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[19]     In its Motion, Plaintiff dismissed Counts V, VIII, IX, XII.  Plaintiff also dismissed its request for pre-judgment interest.  (See Mot. at 15.)